FREDERIKA ACHILLES *et al.*

*v.*

SARAH A. ACHILLES.

*Filed at Springfield, June 16, 1894.*

1. ANTE-NUPTIAL CONTRACT—*must be fairly and intelligently executed by intended wife, and reasonable.* Parties to an ante-nuptial contract occupy a confidential relation towards each other; and while they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet when the provision secured for the intended wife is disproportionate to the means of the intended husband, it raises a presumption of designed concealment on his part, and throws the burden upon those claiming in his right to prove that there was full knowledge on the wife's part of all that materially affected the contract.

2. Where a man, at the time of making an ante-nuptial contract with his intended wife, had real estate worth $12,500, and personal property and good notes and bonds worth from $8,000 to $10,500, and the contract provided that the wife should have, so long as she remained his widow, the free use, either of the upper story of his brick building or the upper story of his frame house, with one half of the lots on which the house was standing, for use as a garden or yard room, and should also receive, as long as she remained his widow, $200 per annum, payable semi-annually, out of his estate, and the proof showed that he concealed from her the extent of his property: *Held*, that the provision for the wife was disproportionate to the husband's means, and was properly set aside for the fraudulent concealment from her of the amount of his property.

APPEAL from the Circuit Court of Sangamon County; the Hon. JACOB FOUKE, Judge, presiding.

Mr. S. S. GILBERT and Mr. J. G. KOESTER, for the appellants.

Messrs. PATTON & HAMILTON, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was a bill, filed to the May term, 1890, of the Circuit Court of Sangamon county, by appellee, as the widow of Louis Achilles, deceased, against appellants, as heirs of

said Louis, for the purpose of setting aside an *ante-nuptial* agreement between herself and her said husband, and also for partition of real estate, and assignment of dower and homestead. The court below held the agreement fraudulent and void, and decreed accordingly. From that decree an appeal was taken to this court, and the decree reversed and the cause remanded. For a statement of the case, see *Achilles et al.* v. *Achilles,* 137 Ill. 589.

On the remandment of the cause, it was reinstated on the docket of the Circuit Court, and referred to the master in chancery to take and report further testimony. On the coming in of his report a second hearing was had, and the Circuit Court again decreed the *ante-nuptial* agreement void, and defendants below appeal.

The only question for decision now is, has the complainant below so far strengthened her case, by additional proofs, as that a different result should be reached from that announced in our former decision. When that decision was made, we laid great stress upon these two circumstances: that the testimony of Charles H. Wineman was the only evidence in the record that the deceased represented his estate to consist of the Carlinville and Virden property alone; and that no agreement to marry had been made at the time the negotiations were pending for the *ante-nuptial* agreement. In both these respects the case of appellee has been greatly strengthened by evidence produced at the second hearing.

Mrs. Lou Wineman, wife of said Charles H. Wineman, testified that she heard most of the conversation between her husband and the deceased; that the latter told her husband that he and appellee were going to get married, and said that he had those two buildings, one in Virden and the other in Carlinville, and that she thought that if there had been any other property mentioned she would have remembered it. Mrs. Martha Luth, who was one of the most important witnesses to establish the case of appellants,

was also, at the second hearing, produced as a witness on behalf of appellee, and she testified: "I had a conversation with Mr. Achilles after the contract between him and Mrs. Wineman in my own house about the property. He told us, me and my husband, what the agreement was between him and her, and after he got through telling that, says he, I did not tell Mrs. Achilles or no man all my business, it ain't best.

He didn't tell Mrs. Achilles, that is, his wife, or no man all his business. He put his hand on his breast and says, it ain't best for a man to tell all his business."

And Henry Dawson, Jr., cashier of a bank at Auburn, testified in regard to Captain Achilles, the deceased, among other things, as follows:

"He first told me what business we had together there was to be kept confidential, and he told me he had some St. Louis city bonds, that they were then matured, and the city of St. Louis was issuing some three-sixty-five, twenty year, I believe, water bonds, and he wished to exchange these matured bonds for water bonds, and he wanted to know if I could transact the business for him, and he requested me at that time to keep the business an entire secret from Mr. Parks, the owner of the bank, and he told me at that time that no one knew he had these bonds, with the exception of his agents in St. Louis.  *  *  He told me at that time not to inform his wife nor Mr. Wineman concerning any of his private business. I then made the exchange for him, and at subsequent times he frequently talked with me about this business, and was continually urging me never to tell any one about his business, saying that no one knew that he had these things.  *  *  *  I told him no one should know, and then he told me, he didn't want Mrs. Achilles or Charley Wineman to know about it.  *  *  *  *  He told me at first, when he first commenced this bond transaction, that his wife knew nothing about his business; she did not know he had these bonds, and he had never told

her, and through previous arrangements with her, if she knew it might cause trouble; there wasn't any one knew except his agents in St. Louis. * * * He said he had made some kind of agreement with his wife before they were married, and that if she knew of this business it might make trouble. I did not pry into his business, in the particulars—his deposits amounted to as high as three thousand dollars there at one time. He said his wife didn't know anything about these bonds."

Since our first decision rendered in this cause, we have had occasion to again consider the law applicable to contracts, like the one here in question. In *Taylor* v. *Taylor*, 144 Ill. 436, we said: "It may be conceded that she (complainant) has the legal capacity to make such a contract, and that marriage was a sufficient consideration to support it."

But, in the absence of clear and satisfactory proof, it is not to be presumed that she would, with full knowledge of all the circumstances, have entered into such a contract. Parties to an *ante-nuptial* contract occupy a confidential relation toward each other. *Kline's Estate*, 64 Pa. St. 124; *Pierce* v. *Pierce*, 71 N. Y. 154; *Rockafeller* v. *Newcomb*, 57 id. 86. While they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband, it raises the presumption of designed concealment, and throws the burden upon those claiming in his right to prove that there was full knowledge, on her part, of all that materially affected the contract. Cases cited, *supra; Beirer's Appeal*, 92 Pa. St. 267; *Tiernan* v. *Reims*, id 248; *Spurlock* v. *Brown*, 91 Tenn. 241. The burden here was, therefore, upon appellants to prove, by satisfactory evidence, that appellee had knowledge of the character and extent of her husband's property, and of the provisions and effect of this instrument, or, at all events, that the circumstances were such that she reasonably ought

to have had such knowledge at the time this instrument was executed.''

Applying the rule thus laid down, especially in view of the additional evidence introduced at the second hearing, we think the decree of the Circuit Court must be affirmed.

Louis Achilles had, at the time of entering into the contract with his intended wife, as stated in our former opinion, real estate worth $12,500, and personal property and good notes and bonds worth from $8,000 to $10,500.

The contract provided the wife should have, as long as she remained his widow, the free use either of the upper story of his brick building in Carlinville, or the upper story of his frame house near the depot in Virden, with one-half of the lots on which the house was standing for use as a garden or yard room, and should also receive, as long as she remained his widow, $200 per annum, payable semi-annually, out of his estate. It will be observed that she was to receive nothing except for life, or while she remained his widow. But if the provision for her had been unconditional, it would have been an exceedingly small allowance out of an estate amounting to more than $20,000. It seems almost incredible that she would have signed the contract giving her a mere pittance, knowing the amount of property her intended husband possessed, when in the absence of such a contract she would be entitled to all the personal property and one-half of all the real estate absolutely, and dower in the remainder upon his death.

We think the provision made by the contract for her so ''disproportionate to the means of the intended husband,'' that under the rule announced in *Taylor* v. *Taylor, supra,* clear and satisfactory proof on the part of the heirs that it was fairly entered into, with full knowledge of the property owned at the time by the husband, was necessary to sustain it, and that such proof is wanting in this record. And, moreover, we also think that the additional evidence produced by appellee at the last hearing of the cause, when

combined with the evidence which was in the former record and is also in this, shows that the deceased at, before, and after the execution of the ante-nuptial agreement concealed the ownership of a large portion of his property from appellee, and was guilty of actual and intentional fraud.

The decree of the Circuit Court is in harmony with the law, and is supported by the evidence in the case, and it will accordingly be affirmed.                    *Decree affirmed.*