SHIREY v. SHIREY.

Opinion delivered July 13, 1908.

1.  DIVORCE—CRUELTY—PROVOCATION.—A wife will not be granted a divorce on account of the cruelty of her husband in chastising her if she has given him serious provocation by her imprudent conduct. (Page 180.)

2.  SAME—CONDONATION.—A voluntary resumption of cohabitation by an innocent spouse, after separation on account of cruel conduct constituting ground for divorce, operates as a condonation of the cruelty; and there need not be long continued matrimonial intercourse in order to constitute condonation, a single act of sexual intercourse being sufficient. (Page 181.)

3.  SAME—WHEN STRICT RULE OF CONDONATION APPLIED.—Although the strict rule of condonation is sometimes relaxed where the wife is the innocent party and is still living with the husband, the rule is applied where on account of alleged cruelty she separated from him and subsequently submits to sexual intercourse with him. (Page 181.)

4.  SAME—ALIMONY.—Though a decree for divorce be denied because of condonation, still alimony may be awarded to the wife for her maintenance where the husband refuses to support her. (Page 183.)

5.  SAME—MODE OF PAYING ALIMONY.—In awarding alimony the court should decree monthly or other periodical payments, subject to modification on a change of circumstances, and not a permanent division of the husband's estate, as provided where a divorce is granted. (Page 183.)

6.  SAME—AMOUNT OF ALIMONY.—The amount to be allowed as alimony is within the sound discretion of the trial court; and all the circumstances of the particular case should be considered in fixing it, such as the husband's ability to pay, the station in life of the parties and the conduct of the wife bearing upon the cause of separation. (Page 184.)

7.  SAME—ALLOWANCE OF ATTORNEY'S FEE.—It is within the trial court's discretion to fix the amount to be allowed for an attorney's fee to the wife in a divorce suit. (Page 184.)

8.  MARRIAGE SETTLEMENT—INFANCY.—An antenuptial contract entered into by a wife while an infant is voidable by her. (Page 184.)

9.  SAME—INADEQUACY.—Where, by a marriage settlement, the husband, having property worth from $200,000 to $250,000, settled on his wife a farm of small value in lieu of her interest in his estate, the settlement will be set aside for unreasonableness. (Page 184.)

10. SAME—PRACTICE ON ANNULLING MARRIAGE SETTLEMENT.—In annulling a marriage settlement for incapacity or unreasonableness, equity will restore the property settled upon the wife to the husband if the wife has not parted with the title and still has it in her possession. (Page 184.)

Appeal from Lawrence Chancery Court; *George T. Humphries,* Chancellor; reversed.

*John B. McCaleb* and *Campbell & Suits,* for appellant.

1. The acts of cruelty complained of by appellee, only one of which—the chastisement for being out with persons of ill-repute—is in any manner corroborated, were condoned by her by voluntarily submitting to intercourse with appellant.

2. It is shown that appellee has been guilty of repeated acts of adultery since their relations were entirely severed, and pursued a systematic course of indignities toward appellant, either of which is sufficient to entitle him to divorce. That she went away secretly and gave birth to the child which she claims was begotten by him, that it died, and its birth and death were concealed from appellant, are facts which establish beyond question that she knew the child was not his; but, had it been his child, her conduct in relation to its birth and death was such an act of cruelty and indignity as to entitle him to a divorce.

3. Under no possible theory appearing in the record can the decree of divorce in favor of appellee be sustained. 53 Ark. 484; 73 Ark. 282; 76 Ark. 28; 77 Ark. 94; 80 Ark. 452. Giving the testimony its strongest probative force against appellant, its only effect would be to bar him from a decree of divorce; and appellee must come with clean hands before she can hope for relief in equity. If the parties are equally at fault, neither can be granted a divorce.

*W. P. Smith, W. A. Cunningham, John S. Gibson* and *Morris M. Cohn,* for appellee.

1. The finding of the court was that the proof was sufficient to entitle the appellee to a decree, and such finding will not be disturbed unless clearly against the weight of evidence.

2. The so-called compromising letters, claimed to have been written by appellee while she and appellant were living together, cannot bar her action for divorce because (1) it is shown by the preponderance of the evidence that they were not written by her; (2) appellant by repeated acts of sexual intercourse with appellee and by the contract of January 11, 1905, condoned any offense in the letters if written by her, and (3)

because appellant by his own collusion and connivance is es-topped to set up any misconduct on her part with the one to whom the letters were addressed. 27 Am. St. Rep. 478; 57 Id. 95.

3. Testimony introduced by appellant, his efforts to entrap her in some act of indiscretion and even of adultery, show conclusive connivance on his part in all acts of pretended adultery charged against his wife. Connivance, either active or passive, is a complete bar to divorce. 57 Am. St. Rep. 95; 75 Id. 202.

4. Whether the Kansas City trip is relied on by appellant as an indignity or as supporting the contention that the child was illegitimate, in either case the contention is unfounded. It was begotten during the time appellant was frequently visiting appellee at the farm. The presumption is, under the circumstances of this case, that the child was legitimate. 48 Am. St. Rep. 488; 94 Am. St. Rep. 180. The picture of the child is competent, and in this case convincing, evidence, to show its resemblance to appellant. 84 Ark. 202. And the fact that she went away clandestinely is explained by her ignorance and the fear aroused by the prognostications of evil, should she give birth to the child at Minturn, uttered by a local fortune teller in whom appellant had taught her to believe.

McCULLOCH, J. Appellant, A. W. Shirey, brings up for review a decree of the chancery court against him in favor of his wife, Fairbelle Shirey, for divorce and alimony and suit money.

Appellant and appellee intermarried on February 29, 1904, the former being then about 70 years old and the latter about 15 years.

Appellant lived at Minturn, a small village in Lawrence County. He was and is a man of considerable wealth, estimated at from $200,000 to $250,000, and was engaged in the mercantile business and farming. Appellee lived with her mother and two brothers as tenants on one of appellant's numerous farms in the vicinity of Minturn, and the two had been acquainted with each other for several years. Prior to the marriage appellee instituted an action in the circuit court of Lawrence County against appellant to recover damages for seduction, and

this action was pending but was dismissed at the time of the marriage. Appellee's mother instituted the action for her as next friend. On the day of the marriage they entered into an ante-nuptial contract, whereby appellant settled upon her, in consideration of the marriage and in lieu of all other marital rights in his property, a farm of small value. Appellee being then an infant, the contract was executed for her by a guardian appointed on that day by the probate court. It was also signed by her mother. They lived together only about three months. Appellee left the home of her husband in Minturn in May, 1904, and returned to her mother, and on June 15, 1904, she commenced a suit against him for divorce and alimony on the alleged ground of cruel treatment and indignities. They never lived together after that time, though appellant visited her occasionally at her mother's home during the months of July, August and September, 1904, and on January 11, 1905, they entered into another written contract whereby she agreed to dismiss the pending suit for divorce and not to again employ the attorneys who then represented her in that suit "in any suit either in law or equity that she may hereafter bring or defend against the said A. W. Shirey," and he agreed to pay her the sum of $25 per month for her maintenance.

The chancery court had previously made an order in the divorce case directing appellant to pay fees of appellee's attorneys in the sum of $500 and the sum of $25 per month for her maintenance during pendency of the suit; and it appears that at the time of this agreement between them referred to above in January, 1905, they compromised the allowance made to her by the court for attorney's fees so as to cheat the attorneys out of it and divide it between themselves. Pursuant to the aforesaid agreement the divorce suit was the next day dismissed. A short time afterward appellant declined to pay the stipulated monthly allowance, and on February 16, 1906, appellee instituted against her husband a suit in chancery to cancel and set aside the antenuptial contract and to recover permanent alimony. She alleged in her complaint that she was an infant, and therefore incapable legally of entering into a binding contract; that her consent to the execution of the contract was obtained by fraud; that her husband had, in May, 1904,

"without cause whipped her openly in the public streets of Minturn, where they lived, cursing her and threatening to kill her, driving her from his home, causing her great suffering of mind and body, from the effects of which she still suffers, rendering her partially unable to earn her living by hard labor, and causing her the necessity of expenditure of a great deal of money, which he has failed and refused to furnish her, but to the contrary has caused to be published in the 'Blade,' a weekly newspaper published in Lawrence County, a notice saying that he would not pay her debts; and that after the execution of the agreement on January 11, 1905, he had refused to pay her the amount stipulated therein, and had refused to live with her or support her." She asked for a decree for a permanent monthly allowance of one hundred and seventy-five dollars. Subsequently, on September .............., 1907, she amended the prayer of her complaint by asking for a decree for divorce on the grounds already set forth and for one-third of her husband's estate.

Appellant answered the complaint, denying all the material allegations thereof, and on February 16, 1906, he instituted a separate suit against appellee for divorce, alleging in his complaint, as grounds for divorce, that she had wholly failed to perform her duties as a wife, and had offered such indignities as rendered his condition intolerable by treating him with unmerited reproach, rudeness, studied neglect, open insult, etc. On May 31, 1907, after a considerable part of the testimony had been taken in the cases, appellant amended his complaint so as to charge adultery committed by appellee with various individuals named in the complaint on various dates and with other individuals at different times whose names were to him unknown. Appellee answered the original and amended complaint, denying all the allegations thereof relating to misconduct on her part.

These suits were consolidated by order of court and consent of parties, and at the final hearing the court dismissed for want of equity appellant's complaint for divorce, and granted the prayer of appellee's complaint for divorce and alimony, decreeing to her as alimony one-third of appellant's personal property, irrespective of debts which he may owe, and one-third of his lands for and during her life. The court further ordered ap-

pellant to pay into court the sum of one thousand dollars as fees for her attorneys.

We are of the opinion, after a careful consideration of the voluminous evidence in this case, that neither of the parties have shown themselves to be entitled to a divorce.

Appellee's prayer for divorce is based upon harsh and cruel treatment to which she is alleged to have been subjected by her husband during the brief period of time they lived together, principally in whipping her with a rod or switch publicly in the streets of Minturn. She testified that while they lived together he repeatedly used harsh, insulting and threatening language to her, but he denies it, and her testimony lacks corroboration except as to the one incident of the public whipping referred to above.

There is a conflict in the testimony concerning the circumstances surrounding this incident and as to the extent of the chastisement inflicted. According to appellee's version of the incident, appellant was not justified, but according to his version he inflicted chastisement upon his wife under circumstances not void of provocation for the act. They had been living together about three months, and on a certain afternoon she, in company with a young woman of questionable morals and unsavory reputation in the community, went strolling or walking to the outskirts of the town where they encountered two travelling men; and while they were talking to the men appellant, whose attention had been called to the situation, came up where they were. One of the men who was talking to Mrs. Shirey fled precipitately, and appellant gathered a rod or switch and thrashed his wife with it. The testimony is, as already stated, conflicting as to the severity of the whipping. Appellee denies that the meeting with the men was prearranged, and the only one of the men who testified in the case made the same statement as to the meeting. He said that he and the other man stopped and talked to the two women ten or fifteen minutes. The other woman testified that she went out to the place at Mrs. Shirey's solicitation, and that when they saw the men Mrs. Shirey attracted their attention and sought an introduction; that they arranged to meet them in the cemetery, and were there talking to them when appellant came upon them. It is established be-

yond dispute that appellee, with the other woman, was in company with these men under circumstances calculated to excite the jealousy and anger of her aged husband. That he unbridled his temper and so far disregarded the properties as to administer corporal punishment to his wife does not obscure the fact that she, too, was not free from fault.

While the testimony does not prove any criminal conduct on her part on the occasion, and does not even establish clearly any immoral design, yet she must have known that her conduct, taking the most charitable view of it, was calculated to subject her to criticism and to arouse the displeasure of her husband.

But, conceding that appellant's conduct on this occasion afforded just grounds for divorce, she subsequently condoned it. This was in May, 1904, and she at once left him and instituted suit for divorce, which she afterwards dismissed. She lived with her mother and brothers, but permitted appellant to visit her frequently, and, according to her own testimony, submitted to his embraces. She gave birth to a child in the latter part of May, 1905, which she asserts was begotten by him on the occasion of some of his visits to her at her mother's home in July, 1904. He denies that he had sexual intercourse with her at any time, but he admits that he visited her several times while she was at her mother's home. If what she says is true, she condoned his offense of mistreatment. Continued cohabitation will condone acts of cruelty as well as any other ground for divorce, the only exception being found in cases where the life or health of the innocent party is involved or where cohabitation is continued without separation of the spouses in the hope of better treatment. A voluntary resumption of cohabitation by the innocent spouse, after separation on account of cruel conduct constituting grounds for divorce, operates as a condonation of the cruelty, and there need not be long continued matrimonial intercourse in order to constitute condonation. A single act of sexual intercourse may be sufficient. 14 Cyc. pp. 640, 641; 2 Bishop on Mar. & Div. sec. 302 *et seq.; Clague* v. *Clague,* 46 Minn. 461; *Dunn* v. *Dunn,* 26 Neb. 136.

The strict rule is sometimes relaxed where the wife is the innocent party, but circumstances call for no relaxation of the rule where, as in this case, the wife has separated herself from

her husband on account of alleged cruelty, and while living apart from him in the home of her kindred she voluntarily and repeatedly submits to sexual intercourse. The reason of thus relaxing the rule in favor of an injured wife is stated to be because of the greater difficulty accompanying her withdrawal from the domicil of her husband, arising from her greater dependence on him for protection and support, but this reason disappears where she has already withdrawn from him and then voluntarily resumes cohabitation under the circumstances shown in the present case. 2 Bishop on Mar. & Div. sec. 307; *Polson* v. *Polson,* 140 Ind. 310; *Clague* v. *Clague,* 46 Minn. 461; *Armstrong* v. *Armstrong,* 32 Miss. 279.

There is testimony in the record tending strongly to establish the commission of adultery by appellee, but the adulterous conduct which is more convincingly established occurred prior to the execution of the contract of January 11, 1905, and this, together with appellant's conduct in inducing appellee to enter into the contract and dismiss her suit for divorce by promising to take her back again as his wife, condoned her wrongdoing. That he knew, or had good reason to believe at that time, that she had been guilty of adultery there can scarcely be a doubt, for he then had in his possession letters claimed to have been written by her to another man which, if the authenticity be treated as established, proved indubitably her adulterous conduct.

There is evidence tending to establish acts of adultery which occurred after that time, but appellant has himself so obscured the issue by introduction of the testimony of perjured witnesses that we are unable to separate the true from the false and determine where the truth abides. Appellant shows himself to be a man who believes in spiritualism, foreknowledge, fortune-telling and other occultisms, which made him an easy prey to designing men and women who ingratiated themselves into his confidence only to betray it, and who lent him their aid in procuring false testimony only to desert to his adversary and disclose upon the witness stand his wrongdoing in that respect. Nevertheless, his own guilty participation in those schemes has rendered it impossible to determine with that degree of certainty which should accompany a solemn decree of court whether or not he

has proved the charges of adultery which are said to have occurred subsequent to the aforesaid condonations.

Learned counsel for appellant, in their argument, concede with becoming candor that some of the testimony introduced by their client is unworthy of belief, but argue that there is enough trustworthy testimony in his favor to sustain his charges. In this, however, we cannot agree with them.

Upon the whole, we are convinced that the only true course to pursue in this case is to hold that neither of the parties have shown themselves entitled to a divorce. The chancellor erred in granting appellee's prayer for divorce, but was correct in denying appellant's prayer.

Appellee's prayer for alimony stands upon more substantial grounds. Appellant condoned her offense, and induced her to dismiss her former suit and come back to him, only to cast her off again. After condoning her offense, he refused to support her. Her unsatisfactorily explained visit afterwards to Kansas City, Missouri, where she entered a lying-in hospital under an assumed name and gave birth to a child, only proves an act of adultery occurring prior to said condonation. As the case stands, therefore, appellee is, since the act of condonation, deemed to be free from further fault, and appellant still disowned her and refused to support her. An independent suit for alimony may be maintained, and in the state of the case as just described appellee is entitled to a decree for alimony. *Wood* v. *Wood,* 54 Ark. 172. Though a decree for divorce be denied because of condonation, still alimony may be awarded to the wife for her maintenance where the husband refuses support. 14 Cyc. pp. 768, 769.

Under those circumstances, however, the allowance should be a continuing one for monthly or other periodical payments of amounts fixed by the court subject to modification on a change of circumstances, and not a permanent division of the husband's estate, as is provided for by statute in case a divorce is granted. *Kurtz* v. *Kurtz,* 38 Ark. 119; *Brown* v. *Brown,* 38 Ark. 324; *Wood* v. *Wood,* 59 Ark. 441. By this method he is given the opportunity to return to his duty, and offer in good faith to take the wife back and support her. This he may do at any time; and if she refuses the offer without just cause, that would be

such a change of circumstances as would justify an abrogation of the allowance.

The amount of such allowance is within the sound discretion of the court, and all the circumstances of the particular case should be considered in fixing it. The husband's ability to pay, the station in life of the parties and the conduct of the wife bearing upon the cause of separation should all be considered. We have concluded, after considering all the facts of this case, that an allowance of fifty dollars per month is the proper one to be made.

The chancery court ordered appellant, during the pendency of the suit, to pay appellee's attorneys the sum of two hundred and fifty dollars, which has been paid, and made a further order in the final decree for payment of the additional sum of one thousand dollars. We think this was an excessive allowance. This, too, is a matter within the discretion of the court, considering all the circumstances. Appellee failed in her suit for divorce, but succeeded in defeating her husband's prayer for divorce and in obtaining alimony.

An allowance of the sum of five hundred dollars as attorneys' fees, in addition to the sum heretofore paid, is sufficient.

The antenuptial contract is voidable on account of the incapacity of the wife by reason of infancy. "Marriage settlements being merely civil contracts, all defenses which could be properly set up against other contracts may be set up against them, such as the statute of frauds, laches, want of consideration, incapacity of parties, fraud and duress." 21 Cyc. p. 1271; 22 Cyc. p. 537.

Fairness and good faith should characterize such a contract, and the provisions in this one for the benefit of the wife are so inadequate that a court of equity should set it aside on account of its unreasonableness, even if the wife possessed the legal capacity to enter into it. *Achilles* v. *Achilles,* 151 Ill. 136.

The court should, in annulling marriage contracts on the grounds hereinbefore indicated, restore to the husband the property settled upon the wife if she has not parted with the title and still has it in her possession.

The cost of the litigation, including the cost of this appeal, should be decreed against appellant.

The decree, in so far as it dismisses appellant's complaint, is affirmed; in all other respects the decree is reversed; and the cause is remanded with directions to the chancery court to enter a decree in accordance with this opinion.   It is so ordered.

WOOD, J., concurs in the judgment.