## Davis *v.* Davis.

### 4-5049

Opinion delivered April 25, 1938.

58

*W. K. Ruddell, S. M. Casey* and *Shields M. Goodwin*. for appellant.

*Chas. F. Cole*, for appellee.

McHANEY, J. T. R. Davis and Miss Nora Hancock, both residents of Independence county, were married on July 12, 1929. Mr. Davis was a widower and had several children by his former wife. One child, T. R. Davis, Jr., was born of his second marriage in 1931, and he was six years old when his father, T. R. Davis, died on April 22, 1937, leaving an estate of about $7,000. One day prior

to this marriage, on July 11, 1929, T. R. Davis and Miss Nora Hancock entered into a prenuptial agreement and, for the purposes of this opinion, we assume that this agreement was definitely established by the testimony of the notary who took their acknowledgments to it, by the terms of which appellee agreed to accept $100 in full settlement of all her interest in the estate of Mr. Davis in the event he predeceased her. This contract was executed in duplicate by both of the parties and presumably each received a copy of it; but upon his death, the appellant, a son, administrator of his estate, was unable to find a copy of the contract among his papers, and we assume that it has been lost or destroyed, although there may be some question as to whether the proof sufficiently developed this fact to justify the admission of parol evidence to establish the contents of the written instrument. It is conceded in the briefs that Mr. Davis was much older than appellee, but the record fails to disclose their respective ages.

After the death of Mr. Davis, appellee instituted this action against appellant as administrator of said estate to have her dower and statutory allowances set aside to her. Appellant defended on the ground that the antenuptial agreement precluded her from claiming more than $100. Appellee was permitted to testify over appellant's objections, that the terms of the antenuptial agreement provided that she should take only $100 in the event of their separation or divorce. As to whether she was a competent witness, we find it unnecessary to decide, in view of the fact that we are assuming, for the purpose of this opinion only, that she made the agreement to take only $100 in the event her husband should predecease her.

The probate court upheld the antenuptial agreement and directed the administrator to pay appellee $100, in full settlement of her dower, homestead and statutory rights in the estate of her husband. On appeal to the circuit court, the judgment of the probate court was reversed and it was held that she was entitled to dower, homestead and statutory allowances in the estate of her

late husband regardless of the antenuptial agreement of July 11, 1929. The case is here on appeal.

In *Comstock* v. *Comstock*, 146 Ark. 266, 225 S. W. 621, Mr. Justice WOOD, speaking for the court, said: "Marriage was a sufficient consideration for the antenuptial contract. Where such contracts are freely entered into and are not unjust or inequitable, and there is no fraud, they should be liberally construed to effectuate the intention of the parties and should be looked upon with favor and enforced accordingly. . . . The contract was valid between the appellant and the appellee, although it was not acknowledged." Section 5167, Kirby's Digest, which is now § 9012 of Pope's Digest, reads as follows: "No marriage contract shall be valid or affect property except between the parties thereto, and such as have actual notice thereof, until it shall be deposited for record with the clerk and recorder of the county where the real estate is situate." The instrument in question was acknowledged but not recorded, but this failure to record did not affect its validity as between the parties and their privies. In *Shirey* v. *Shirey*, 87 Ark. 175, 112 S. W. 369, the court said: "Fairness and good faith should characterize such a contract, and the provisions in this one for the benefit of the wife are so inadequate that a court of equity should set it aside on account of its unreasonableness, even if the wife possessed the legal capacity to enter into it." Citing *Achilles* v. *Achilles*, 151 Ill. 136, 37 N. E. 693.

In *Brawley* v. *Rogers*, 188 Ark. 655, 67 S. W. 2d 176, the court used this language: "The statute, § 7028, *et seq.*, Crawford & Moses' Digest, authorize the making of antenuptial agreements by parties contemplating marriage. The law has always allowed parties in contemplation of marriage to fix the rights of each in the property of the other by an agreement equitably and fairly made between them that will exclude the operation of the law in that respect. 13 R. C. L., pages 1012-15. It is likewise held that marriage is a sufficient consideration for such antenuptial agreement or marriage settlement."

See, also, *Oliphant* v. *Oliphant,* 177 Ark. 613, 7 S. W. 2d 783.

So it will be seen that the principle is announced in all of our cases, that in order for antenuptial contracts to be valid, they must be freely entered into, must not be unjust or inequitable and they must not be tainted with fraud. It appears to us that the contract in this case fails to meet these requirements in that it is an unjust and inequitable agreement. For only $100, if the contract should be enforced, she would be required to give up $450, which is absolutely secured to her under our statutes, the estate being solvent, (and it is), her right of homestead and dower in and to more than $7,000 worth of property. In the case of *Achilles* v. *Achilles, supra,* cited with approval in *Shirey* v. *Shirey, supra,* the court quoted from *Taylor* v. *Taylor,* 144 Ill. 436, 33 N. E. 532, the following: "It may be conceded that she (complainant) has the legal capacity to make such a contract, and that marriage was a sufficient consideration to support it." Continuing in the Achilles case, the court said:

"But, in the absence of clear and satisfactory proof, it is not to be presumed that she would, with full knowledge of all the circumstances, have entered into such a contract. Parties to an *antenuptial* contract occupy a confidenial relation toward each other. In re *Kline's Estate,* 64 Pa. St. [122] 124; *Pierce* v. *Pierce,* 71 N. Y. 154, 27 Am. Rep. 22; *Rockafeller* v. *Newcomb,* 57 Ill. 86. While they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband, it raises the presumption of designed concealment, and throws the burden upon those claiming in his right to prove that there was full knowledge, on her part, of all that materially affected the contract. Cases cited, *supra;* Beirer's Appeal, 92 Pa. St. [265] 267; *Tiernan* v. *Binns,* 92 Pa. 248; *Spurlock* v. *Brown,* 91 Tenn. 241, 18 S. W. 868. The burden here was, therefore, upon appellants to prove, by satisfactory evidence, that appellee had knowledge of the character and extent of her husband's

property, and of the provisions and effect of this instrument, or, at all events, that the circumstances were such that she reasonably ought to have had such knowledge at the time this instrument was executed.''

Here, the provision secured for the appellee in the contract is disproportionate to the means of Mr. T. R. Davis, and ''it raises the presumption of designed concealment, and throws the burden upon those claiming in his right to prove that there was full knowledge, on her part, of all that materially affected the contract.'' There is no proof in this record that appellee had any knowledge of the character and extent of her husband's property or that she was so well acquainted with him and his holdings as to justify the conclusion that she ought to have knowledge thereof at the time she executed said contract. Since appellant has failed to make such proof, he has not met the burden placed upon him by law and we must hold that the contract is invalid.

In this view of the case, it becomes unnecessary to determine whether her testimony regarding the contents of the antenuptial agreement was competent, as it can make no difference. Therefore, conceding that the contract was couched in the language contended for by appellant, it cannot be sustained. Moreover, it has been held by the Illinois court that the contract at the time of the death of Mr. Davis, was purely executory, and that upon his death, she repudiated it and claimed her widow's award, dower and homestead in the real estate of the deceased. In this connection, see *Zachmann* v. *Zachmann*, 201 Ill. 380, 66 N. E. 256, 94 Am. St. Rep. 180, where it was held that a widow whose family consists, in part, of a child of the deceased husband, may repudiate an executory antenuptial contract releasing the widow's award and that the homestead rights cannot be waived by such a contract even though it is made and acknowledged in conformity with the law relating to the release of the homestead, where there is a minor child of the deceased householder, as well as the widow, who is interested in the preservation of the estate, and that such a contract is inoperative and does not affect dower. It was there

further held, to quote a syllabus: "Laws enacted out of concern for the public welfare as well as for the benefit of those directly affected by the law, in so far as they confer privileges and exemptions upon persons not only for their own benefit, but also for the benefit of others dependent upon them, cannot be abrogated by personal agreements."

The judgment of the circuit court is correct, and is, therefore, affirmed.

SMITH and DONHAM, JJ., dissent.