Violet B. GOOCH *v.* James T. GOOCH

CA 83-181                                   664 S.W.2d 900

Court of Appeals of Arkansas
En Banc
Opinion delivered February 29, 1984

*Cliff Jackson, P.A.,* for appellant.

*Laser, Sharp & Huckabay, P.A.,* for appellee.

DONALD L. CORBIN, Judge. This case involves a

determination of the validity of an antenuptial agreement which was at issue in a divorce action brought by appellee, James T. Gooch, against appellant, Violet B. Gooch. Venue of the action was also questioned by appellant. Judge Royce Weisenberger ruled that the proper venue was in Clark County rather than Garland County. Judge Weisenberger awarded appellant $1,250.00 temporary monthly support; found the antenuptial agreement was valid; that neither party was to have an interest in the property the other owned before the marriage, or any increase in its value during the marriage from its exchange or investments; that appellant's earnings from his law practice should be excluded from marital property; and recused himself from hearing the divorce on the merits. Judge Henry Yocum, Jr. on assignment heard the merits of the divorce and awarded appellee a divorce and ruled that the provision of the antenuptial agreement relating to a payment of $50,000.00 was inoperative because appellee was granted the divorce. We affirm.

The question of proper venue in this case is primarily a factual question to be determined by the intent of the person seeking to maintain a residence and domicile. Among the factors looked at to determine whether a person has the requisite intent to establish a domicile in a particular place are: declarations of the parties; the exercise of political rights; the payment of personal taxes; a house of residence; and a place of business. *Ellis* v. *Southeast Construction Co.,* 158 F. Supp. 798 (W. D. Ark. 1958). Such factors were examined in a divorce case reported in *Morgan* v. *Morgan,* 202 Ark. 76, 148 S.W.2d 1078 (1941), to establish that a person was domiciled in Arkansas despite his physical presence in Missouri. The facts in the instant case were of at least equal weight as those found in *Morgan, supra.* Here, appellee testified extensively concerning his intent to retain Clark County as his domicile rather than Garland County where he and appellant resided in a lakeside home for the better part of the five years they were married. Appellee testified that he had practiced law in Arkadelphia, Clark County, Arkansas, since 1954. He further testified that he maintained a home in Caddo Valley, Arkadelphia, Arkansas, which was completely furnished with telephone, television, etc. He continued to maintain his voting rights in Clark County

and was a director of the Elk Horn Bank in Clark County. He testified that he never considered Garland County, Arkansas, as his home and that he had no business, religious or any other association with Garland County, Arkansas, other than his ownership of the lake house. He testified that he declared his permanent residence to be Clark County since he moved there in 1947. Appellant stipulated that both parties, throughout the marriage, voted in Clark County, Arkansas. Appellee never severed any of his business connections in Clark County nor did he sell or dispose of any of his property. He continued his practice of law and service as an officer and director of the Elk Horn Bank in Arkadelphia. The evidence is overwhelming that Clark County was the proper venue for this action.

Chancery cases are tried *de novo* on appeal, and the appellate court does not reverse the chancellor's findings of fact unless they are clearly erroneous (clearly against the preponderance of the evidence). A.R.C.P. Rule 52(a), *Ballard* v. *Carroll,* 2 Ark. App. 283, 621 S.W.2d 484 (1981). We must review the testimony in the light most favorable to the appellee, and indulge all reasonable inferences in favor of the decree. *Ark. State Hwy. Comm.* v. *Oakdale Development Corp.,* 1 Ark. App. 286, 614 S.W.2d 693 (1981).

Concerning the validity of the antenuptial agreement which the parties entered into on May 27, 1976, we agree with the chancellor's finding that it was a valid and enforceable agreement. In Arkansas, an antenuptial agreement is valid if it was freely entered into, and is free from fraud and not inequitable. *Arnold* v. *Arnold,* 261 Ark. 734, 553 S.W.2d 251 (1977). Further, the agreement must be made in contemplation of the marriage relation subsisting until death, rather than in contemplation of divorce. *Oliphant* v. *Oliphant,* 177 Ark. 613, 7 S.W.2d 783 (1928). The evidence in this case clearly establishes that the agreement was freely entered into by the parties with no evidence of fraud, duress or coercion being exercised by either party. In view of the parties' respective stations in life and their extensive experience, education and knowledge of financial and legal matters, the agreement was equitable and fair. Appellant was forty-nine years old at the time the agreement was

executed. She had children who were 35 and 15 years of age. She testified that she had worked as a legal secretary; was employed as a court reporter for 14 years; worked as a secretary in construction and home building; and owned some Shakey's Pizza Parlors. She testified that she had supported herself by buying and selling stocks and bonds. She further testified that she had three years of college. She testified that she had substantial assets of her own. She testified that when the agreement was mailed to her in Dallas that "there was no point in getting advice from a lawyer there" and "I wouldn't think a lawyer could give me an opinion any more than Jim could give it to me." She further testified that at the time they entered into the agreement that appellee was a practicing attorney who had indicated he was quite well off. On the other hand, appellee was sixty-two years old with two grown children by a previous marriage at the time the agreement was executed. He had a prosperous practice as an attorney, was a director of a bank and owned extensive property. He listed the bulk of his holdings in the agreement to an extent that substantially disclosed his wealth, particularly to anyone having the background and business experience of appellant. Appellant's assertion that she was ignorant of the consequences of the agreement and that she failed to fully inform herself of the consequences of the circumstances of the parties because she was "in love" is no evidence of fraud, as was held in *Babb* v. *Babb, Ex'r*, 270 Ark. 289, 604 S.W.2d 574 (Ark. App. 1980). This case is very different from the Arkansas cases in which antenuptial agreements have been declared void because of fraud or the absence of a full and fair disclosure. For example, in *Faver* v. *Faver*, 266 Ark. 262, 583 S.W.2d 44 (1979), it was found that there was a complete lack of disclosure as to the extent or value of the husband's property before execution of the contract as well as a disproportion between the provision for the wife and the means of the husband. Similarly, in *Arnold, supra*, it was found that the husband did not make a full disclosure to the wife and that the husband "obtained the agreement" through "design, studied planning and concealment, which constituted fraud and overreaching." In contrast, appellant in the present case was made fully aware of the extent of appellee's property before the agreement was executed; appellant had full opportunity to

read the agreement and seek legal advice concerning it; and appellant knew that the agreement did not in express terms address the contingency of divorce.

Appellant testified that the only promises made by appellee to her prior to her signing the antenuptial agreement were that he would support her and that she would have a "nice, new life". She further testified that he lived up to that promise in supporting her in a "very well" style. Appellant apparently understood at the time of the signing of the agreement that if she lived with appellee until he died, she would be entitled to none of his property except for the $50,000.00 mentioned in the last paragraph of the agreement. She also apparently understood that, by the same token, appellee would receive none of her property if she died. It is manifestly unreasonable for appellant to have expected a substantial share of appellee's property if they divorced, but only $50,000.00 if she remained married to him until his death. With respect to the purpose of the agreement in this case, appellant testified that it was to protect each party and their separate children in the event of the death of one party, and she admitted that divorce was never mentioned in connection with the agreement. Hence, both parties agree that the requirement that such an agreement be made in contemplation of death rather than divorce is met. Appellant contends, nevertheless, that the agreement is "inequitable" because it did not in express terms provide for the contingency of a divorce. In other words, appellant apparently asks this Court to rewrite the contract so as to make it void *ab initio,* since antenuptial agreements in contemplation of divorce alone, which tend to induce divorce, are against the public policy of Arkansas. *Hughes* v. *Hughes,* 251 Ark. 63, 471 S.W.2d 355 (1971); *Oliphant, supra.*[1] This we refuse to do.

We find no error in the trial court's determination that appellant was not entitled to a portion of appellee's law practice as marital property because of her contribution as a party hostess. Appellee's practice had been established many

---

[1]This would not be the rule for those agreements executed after the effective date of Act 705 of 1979 (Ark. Stat. Ann. § 34-1212).

years before his marriage to appellant. No showing was made that her serving as a party hostess in any way contributed to any growth of appellee's law practice. Further, we see no evidence of a joint effort in the acquisition of the lake house in Garland County, Arkansas. Appellee used assets that he brought into the marriage to purchase the lake house and was explicit in his requirement that the title to the lake house be placed in his name solely. This is in keeping with the tenor of the antenuptial agreement and consistent with the maintaining of appellee's assets separate and apart from that of appellant.

Accordingly, we cannot say the chancellor's findings are clearly erroneous. Each party shall pay his own costs. Appellee is ordered to pay appellant's attorney a fee of $750.00.

Affirmed.

GLAZE, J., not participating.

CLONINGER, J., dissents.

LAWSON CLONINGER, Judge, dissenting. I respectfully dissent from the majority's opinion. I would hold the antenuptial agreement invalid on the basis that the chancellor's decision was clearly against a preponderance of the evidence in that there was not a full and fair disclosure of Mr. Gooch's property in the antenuptial agreement. The antenuptial agreement describes appellant's property as set out below:

> Whereas the party of the first part has disclosed to the party of the second part the full amount of all property owned by him, consisting primarily of the building at 5th and Clay Streets and rents therefrom, in Arkadelphia, Arkansas, approximately 240 acres in Tallachatahie County, Mississippi, approximately 2200 acres in Lincoln County, Arkansas, approximately one-half interest in property located on Hy. 7, referred to as 'Hide Out', property located at 2211 West Pine,

Arkadelphia, Arkansas, Partial Remainderman's interest in property located at 107 No. 9th Street, Arkadelphia, Ark., stock in Bank of Star City, Benton State Bank and Elk Horn Bank and Trust Company and a few other stocks which party of the second part is familiar with; . . .

The rule in Arkansas with respect to antenuptial agreements is that they are to be regarded with the most rigid scrutiny and will not be enforced against a wife where the circumstances show that she has been overreached and deceived. *Arnold* v. *Arnold,* 261 Ark. 734, 553 S.W.2d 251 (1977). A presumption of designed concealment arises where the provision in an antenuptial agreement is disproportionate to the means of the intended husband. This casts the burden upon the husband who drafted the agreement to prove that there was full knowledge on the part of the intended wife of all that materially affected the contract. In other words, the intended husband must show by a preponderance of the evidence that the intended wife had full knowledge of the nature and extent of his property at the time the agreement was entered into before the husband can overcome the presumption of designed concealment. See *Faver* v. *Faver,* 266 Ark. 262, 583 S.W.2d 44 (1979); *Arnold* v. *Arnold, supra; Davis* v. *Davis,* 196 Ark. 57, 116 S.W.2d 607 (1938).

The majority states that Mr. Gooch "listed the bulk of his holdings in the agreement to an extent that substantially disclosed his wealth." Further, it is stated that Mrs. Gooch failed to fully inform herself of the consequences and that there was no evidence of fraud. However, under Arkansas law, I find that the burden was not on Mrs. Gooch to inform herself of the consequences, but rather the burden was on Mr. Gooch to show that he *fully,* not substantially, informed her of the nature and extent of his property. That he failed to do.

Mr. Gooch did not disclose any of his income, including income which he received from his property holdings, his law practice, his stock holdings and income from his interest in race horses. Further, Mr. Gooch, in the antenuptial agreement, did not state the value of any of the

property which he owned, as well as the income generated from such property. He stated in the agreement that he owned stock, but did not state how many shares or what the value of the shares are.

Nevertheless the majority distinguishes this case from the cases of *Faver, supra,* and *Arnold, supra,* on the basis that in this case Mrs. Gooch was "made fully aware of the extent of appellee's property before the agreement was executed." I do not conceive how the majority can reach this conclusion in light of the above stated facts.

The majority emphasizes the fact that Mrs. Gooch was an experienced businesswoman coming into the marriage and should have informed herself of the consequences of the antenuptial agreement. However, as I have stated earlier, under Arkansas law the burden was not on Mrs. Gooch to show that she had fully informed herself of the consequences of the agreement, but rather was on Mr. Gooch to show that there was a full and fair disclosure of his property. *Arnold, supra; Faver, supra.*

In *Arnold, supra,* the following language is poignantly relevant to the facts in this case:

> . . . because of the confidential relations between the parties, such an agreement is sufficiently suspicious to cast the burden of proof upon those who seek to support it to show that the husband took no advantage of his influence and knowledge and that the arrangement was fair and conscientious.

In *Arnold, supra,* the wife was to receive $100,000 in cash, an automobile and a trailer from the terms of an antenuptial agreement. The chancellor had found that the agreement was unjust and inequitable and was tainted with fraud in holding the agreement invalid. On appeal, the Arkansas Supreme Court noted that the widow's rights would probably have been twice as valuable as the provision for her under the agreement in upholding the chancellor's decision.

In this case, Mrs. Gooch receives nothing under the

agreement. Obviously, her interests would have been substantial if she had not signed the agreement. Mr. Gooch stood in a confidential relationship to Mrs. Gooch, and it can be fairly said that he stood in a fiduciary capacity with respect to her interests, particularly in light of the fact that Mr. Gooch was a prominent lawyer in the community. Her testimony that "I wouldn't think a lawyer could give me an opinion any more than Jim could give me" demonstrates the trust appellant reposed in appellee. I believe he failed in his fiduciary duty to Mrs. Gooch and that he failed to fully disclose the nature and extent of his property in the agreement. Aside from these reasons, I would reverse merely on the basis that the agreement, as written, is unjust and inequitable. See *Arnold* v. *Arnold, supra.*