Christy Evans BANKS *v.* Jim EVANS

01–464 64 S.W.3d 746

Supreme Court of Arkansas
Opinion delivered January 17, 2002

386

*Scott Manatt*, for appellant.

*Henry, Halsey & Thyer, PLC*, for appellee.

TOM GLAZE, Justice. This appeal presents us with questions of first impression regarding the interpretation and application of Ark. Code Ann. §§ 9-11-401 to -413, the Arkansas Premarital Agreement Act. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (4).

On March 12 and 13, 1996, appellant Christy Evans Banks and appellee Jim Evans signed a premarital agreement in contemplation of marriage. The couple married on March 16, 1996, but separated in January of 1997. Jim filed for divorce on March 4, 1997. The couple attempted a reconciliation in November of 1997, but the attempt failed and the parties separated for good on April 6, 1998. Jim then filed an amended complaint for divorce, asserting that the property rights to be adjudicated were governed by the premarital agreement. Christy filed a counterclaim for divorce, and she also filed a request for production of documents, including numerous financial records. Jim objected to the request and filed a motion for protective order, asserting that the court should not permit discovery to proceed until the validity of the premarital agreement was determined. At the same time, Jim also filed a petition to determine the enforceability of the agreement. In an order entered December 8, 1998, the chancellor held that the premarital agreement was valid and enforceable; the court also ruled that the agreement was not unconscionable and that Jim and Christy's reconciliation did not abrogate the contract.[1]

On October 6, 1999, Jim filed a second amended complaint for divorce, this time asserting eighteen months' separation as

---

[1] Christy appealed that ruling, but the court of appeals dismissed the appeal for lack of a final order.

grounds. Following a hearing on October 19, 1999, the chancellor entered a divorce decree, specifically reserving the issue of the distribution of property until a later date. On December 28, 2000, after a hearing on the reserved property issues, the chancellor entered a supplemental decree of divorce, ordering that the marital residence be sold and the proceeds distributed after the sale. The court rejected Christy's claim that she had an interest in certain other property, including a Tahoe vehicle, a pontoon boat, and a country club membership.

From the supplemental decree of divorce, Christy brings the present appeal. She argues that the trial court erred in denying her request for discovery, in finding the premarital agreement to be valid, and in failing to distribute the marital property as set forth in Ark. Code Ann. § 9-12-315.

■ ■ Chancery cases are tried *de novo* on appeal, and the appellate court does not reverse the chancellor's findings unless they are clearly erroneous. *See Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000). Further, in reviewing a chancery court's findings, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Davis v. Child Support Enfcm't*, 341 Ark. 349, 20 S.W.3d 273 (2000).

■ Although Christy's initial point on appeal is the chancellor's ruling regarding discovery, we address the validity of the premarital agreement first. Arkansas law has long recognized the validity of such agreements. *See, e.g., Oliphant v. Oliphant*, 177 Ark. 613, 7 S.W.2d 783 (1928). In Arkansas, a premarital agreement is valid if it was freely entered into, and is free from fraud and not inequitable. *Arnold v. Arnold*, 261 Ark. 734, 553 S.W.2d 251 (1977); *Gooch v. Gooch*, 10 Ark. App. 432, 664 S.W.2d 900 (1984). Parties contemplating marriage may, by agreement, fix the rights of each in the property of the other differently than established by law. Such agreements must be made in contemplation of the marriage lasting until death, rather than in contemplation of divorce. *Hughes v. Hughes*, 251 Ark. 63, 471 S.W.2d 355 (1971). However, the mere fact that a prenuptial agreement becomes operative upon divorce — so long as that is not its only purpose — does not render it invalid. *Dingledine v. Dingledine*, 258 Ark. 204, 523 S.W.2d 189 (1975). In

determining the fairness or equity of the agreement, the court may consider the parties' respective stations in life, their experiences, their education, and their knowledge of financial and legal matters. *Gooch, supra.*

■ ■ In 1987, the General Assembly passed Act 715, the Arkansas Premarital Agreement Act, codified at Ark. Code Ann. §§ 9-11-401 to -413 (Repl. 1998). Under the Act, a premarital agreement is defined as a written agreement between prospective spouses made in contemplation of marriage. § 9-11-401(1). The agreement becomes effective upon marriage, § 9-11-404, and after marriage, it may be amended or revoked only by a written agreement signed by the parties. § 9-11-405. With regard to the enforceability of such agreements, § 9-11-406 provides, in part, as follows:

> (a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:
>
> (1) The party did not execute the agreement voluntarily; *or*
>
> (2) The agreement was unconscionable when it was executed and, before execution of the agreement, that party:
>
> (i) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
>
> (ii) Did not voluntarily and expressly waive after consulting with legal counsel, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; *and*
>
> (iii) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

(Emphasis added.)

Christy argues that the agreement was unconscionable and unenforceable for several reasons. First, she argues that the contract was invalid because she did not know Jim's net worth prior to signing the contract, and that Jim failed to rebut the presumption of "designed concealment," a presumption which arises when the provisions made for the wife are disproportionate to the means of the husband. *See Faver v. Faver*, 266 Ark. 262, 583 S.W.2d 44 (1979). In addition, she claims the agreement was abrogated when

she and Jim reconciled in 1997. Finally, Christy contends that the agreement was unconstitutional, gender-biased, and discriminatory.

■ We reject Christy's assertion that the premarital agreement was invalid because she was unaware of Jim's financial position. Article I of the agreement recited that "each Party is acquainted with the property of the other due to their friendship over a period of time and each has freely disclosed to the best of their knowledge and ability. to the other the nature, extent, and value of said property[.]" Further, both Christy and Jim expressly waived their rights to a detailed disclosure of the other's financial obligations. The waiver Christy signed read in part as follows:

> I, Christy Miller, a party to the premarital agreement to which this waiver is attached, do hereby acknowledge that I have an adequate knowledge of the property, value of the property, and financial obligations of Jim Evans by virtue of our friendship over a period of time.

> I, Christy Miller, do hereby acknowledge that I have the right to have caused to be prepared a general list of the properties and value of such properties or interests owned by Jim Evans and to have said general list of properties prepared by him to be attached to the premarital agreement and made a part thereof.

> I, Christy Miller, do hereby waive the requirement that both parties to the agreement provide to the other and be provided by the other a fair and reasonable disclosure of the property, value of the property, and financial obligations of the other party beyond any disclosure already provided.

> I, Christy Miller, do hereby agree that this waiver and the similar waiver of Jim Evans shall be attached to the premarital agreement and made a part thereof in lieu of any general list of properties prepared by us.[2]

Furthermore, at the court's hearing on the validity of the premarital agreement, Jim testified that Christy had worked in sales for his company, NEA Optical, and was generally aware of how well the business was doing, because she sat in on confidential

---

[2] Jim signed an identical waiver, differing only in the names of the parties.

business meetings between Jim and his accountant, Danette Stewart. Additionally, Jim testified that Christy knew the kind of lifestyle he led, having gone on several trips with him and his daughters from a previous marriage. Jim's accountant, Danette Stewart, also testified that Christy had been present during business meetings, and that Jim never showed any reluctance in discussing financial information in front of Christy. Christy, on the other hand, testified that she did not understand the agreement when she signed it, and that Jim had never furnished her with any kind of financial disclosure prior to her signing the agreement.

This conflicting testimony was for the chancellor to resolve, and we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony. *See, e.g., Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). Clearly, the chancellor did not believe Christy's testimony that she did not understand the agreement. It is a rule of general application that one is bound to know the content of a document one signs, and if the signer has had the opportunity to read it before she signs it, she cannot escape the obligations imposed by the documents by merely stating that it was signed without reading it. *See Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991). Here, the agreement was accompanied by a notarized statement that Christy stated that she "had read the foregoing instrument and fully understood the same," as well as a notarized statement by her attorney, H.T. Moore, that he had explained the contract to her and advised her of her legal rights and the legal effect of the agreement and the waiver of right to financial disclosure. In light of the testimony at the hearing, as well as her signature on the document, Christy's mere protest on appeal that she did not know Jim's net worth is unavailing.

Similarly unavailing is Christy's argument that Jim failed to overcome the presumption of designed concealment. This presumption, arising in cases where the wife's provision is disproportionate to the husband's means, "throws the burden upon [the party seeking to uphold the agreement] to prove that there was full knowledge on the part of the intended wife of all that materially affected the contract." *Faver v. Faver*, 266 Ark. 262, 583 S.W.2d 44 (1979). Christy asserts that because she never received any financial information from Jim, he failed to rebut the presumption. However, this argument ignores the fact that Christy signed an express waiver of her right to receive a financial disclosure from Jim. Having voluntarily agreed to the terms of the waiver, she cannot now be heard to complain about its terms.

 Christy raises two other arguments in support of her contention that the premarital agreement was invalid, but we do not need to spend much time discussing them. First, she claims that the reconciliation she and Jim attempted in the fall of 1997 abrogated the agreement; however, Ark. Code Ann. § 9-11-405 provides that a premarital agreement can only be amended or revoked by written agreement signed by both parties. No such written agreement exists here. Second, she contends that the agreement is gender-biased and discriminatory. This argument, however, is wholly without merit, as the terms of the agreement apply equally to both husband and wife. Christy fails to support her claim with any convincing authority, and we therefore do not consider it. *See Public Defender Comm. v. Greene County*, 343 Ark. 49, 32 S.W.3d 470 (2000).[3]

Christy's next point on appeal is that the chancellor erred in denying her motion for discovery. She asserts that she was entitled to discovery pursuant to Ark. R. Civ. P. 26, and that discovery was necessary to address the antenuptial agreement, the disparate and unequal positions of the parties, and Jim's failure to disclose any financial statements, balance sheets, or financial data.

 Arkansas Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, which is relevant to the issues in the pending actions[.]" However, Rule 26(c) states that, "[u]pon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" A trial court's decision on discovery issues will not be reversed absent an abuse of discretion. *City of Dover v. City of Russellville*, 346 Ark. 279, 57 S.W.3d 171 (2001).

In the present case, the decision to postpone discovery until after the court could determine the validity of the prenuptial agreement was clearly intended to save the time and expense of preparing answers to interrogatories and responses to requests for production of documents. If the agreement was found valid, then its terms

---

[3] Christy also briefly asserts that Jim does not come to the court with clean hands, and she alleges that he battered and slandered her. However, while Christy initially raised these tort claims against Jim in her counterclaim for divorce, she voluntarily nonsuited these claims prior to the trial court's original decree of divorce, and we need not discuss them further.

would control and there would be no need to discover the kind of financial information Christy sought from Jim, because she would not be entitled to any of his assets under the terms of the agreement. Further, the discovery sought was irrelevant to a determination of whether or not the agreement was valid, because Christy signed a waiver of disclosure of financial information, whereby she agreed that she knew the value of his property and that she waived her right to any further disclosure. Therefore, the trial court did not abuse its discretion in declining to permit the discovery Christy requested.

For her final point on appeal, Christy raises several arguments regarding the trial court's division of the couple's property. First, she argues that the trial court erred in failing to divide all of the couple's property when it entered the initial divorce decree in October of 1999; as noted above, the court specifically reserved the issue of property division when it first granted the divorce, and conducted a second hearing on the property questions in December of 2000. At that time, the court entered a supplemental decree under which the couple's Jonesboro home, which they owned as tenants by the entirety, was to be sold and the proceeds distributed in accordance with the decree.[4] Christy contends that this violated Ark. Code Ann. § 9-12-315, which provides in pertinent part as follows:

(a) *At the time a divorce decree is entered*:

> (1)(A) All marital property shall be distributed one-half ($^1/_2$) to each party unless the court finds such a division to be inequitable.

(Emphasis added.)

However, this court has held that § 9-12-315 does not apply to property held as tenants by the entirety. *Hale v. Hale*, 307 Ark. 546, 822 S.W.2d 836 (1992); *Warren v. Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981). Thus, the trial court did not err when it declined to distribute that property at the time the initial decree was entered in October of 1999.

---

[4] Jim had purchased the house in the name of the "James Evans Living Trust" during the time when he and Christy were separated, but when they reconciled, he refinanced the house in order to put both of their names on the title; the deed then reflected that the couple owned the home as a tenancy by the entirety.

■ Next, Christy argues that she should have been entitled to rent on the Jonesboro home during the period of time prior to the divorce, when Jim lived in the house but she did not. The chancellor rejected this argument, finding that Christy and Jim owned the property as a tenancy by the entirety and had an equal right of ownership and possession. In *Clifton v. Clifton*, 34 Ark. App. 280, 810 S.W.2d 51 (1991), the court of appeals cited *Cooper v. Cooper*, 251 Ark. 1007, 476 S.W.2d 223 (1982), for the proposition that the occupation of one tenant is deemed possession by all cotenants, and thus rejected a similar claim that an ex-spouse who no longer resided in the marital home was entitled to rent during the time he was not living there. The *Clifton* ruling was a correct one, and it is applicable to the facts here. Thus, we likewise conclude that the chancellor did not err in ruling that Christy was not entitled to rent on the residence.

■ Christy also argues that she should have been entitled to one-half of the couple's income-tax savings resulting from their joint filing; however, she cites no authority demonstrating that she was entitled to these amounts. Further, she contends that she should have received one-half the value of a Tahoe vehicle, a pontoon boat, a lot at Ridge Point, and a membership in the Ridge Point Country Club. However, the trial court found that the property was owned by a third-party corporation, and as such, was not marital property. This ruling is correct. Jim testified that his company purchased the vehicle, the boat, the lot, and the membership, and Christy conceded that her name was never on the title to any of these items. Therefore, the chancellor's ruling is not clearly against the preponderance of the evidence.

For the foregoing reasons, we affirm the trial court's rulings and decision.

IMBER, J., not participating.