**Melynda CASTEEL, Gail Curlett, Linda Davis and Elisha Parker, Plaintiffs,**

v.

**CLEAR CHANNEL BROADCASTING, INC., Defendant.**

No. 02–2267.

United States District Court, W.D. Arkansas, Fort Smith Division.

April 17, 2003.

Tanya B. Spavins, E. Diane Graham, R. Chris Parks, Fort Smith, AR, for Plaintiffs.

Louis P. Britt, Memphis, TN, for Defendant.

### MEMORANDUM OPINION & ORDER

DAWSON, District Judge.

On this 17th day of April 2003, there comes on for consideration the Defendant's Motion to Stay Action and Compel Arbitration, (doc. # 5). Plaintiffs filed suit against their former employer, Clear Channel Broadcasting, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), (Title VII), and the Arkansas Civil Rights Act, ARK. CODE. ANN. §§ 16–123–105 et seq., (ACRA), alleging hostile work environment sex discrimination; gender discrimination; retaliation; and constructive discharge. Defendant has filed a motion to stay the civil action and compel Plaintiffs to submit to mandatory final and binding arbitration for resolution of their claims. Plaintiffs filed a response to the motion denying that they had entered into arbitration agreements, (doc. # 9), and Defendant filed a reply. (Doc. # 11.)

Because there were factual disputes concerning the enforceability and validity of the alleged arbitration agreements, an evidentiary hearing on the motion was held

on April 14, 2003 in Fort Smith. Plaintiffs appeared with their attorneys, Tanya Spavins and Chris Parks, and Defendant was represented by its counsel, Louis Britt, III. After reviewing the court record and file, and considering the evidence presented at the hearing, and for the reasons stated herein, the Court finds that the motion to enforce arbitration should be and hereby is DENIED.

## I. Background

Melynda Casteel, Gail Curlett, and Linda Davis were all employed by AMFM, a local broadcasting company, when it was acquired by Clear Channel in August 2000. Clear Channel alleges that on September 11, 2000, each former AMFM employee, including Casteel, Curlett, and Davis, was shown a 10 or 15 minute video tape welcoming AMFM employees to the Clear Channel family and explaining Company employment policies. The video contains a segment in which a portion of the Clear Channel Arbitration Agreement is briefly scanned on screen. The video also shows an employee testimonial during which the employee makes a passing reference to the Company's arbitration policy. (Court's Ex. 6.)

In addition to the video, each former AMFM employee was to receive a "Merger Packet" that included a copy of the July 2000 Clear Channel Employee Guide, (Def's.Ex. 1), and an acknowledgment of receipt form stating that the employee has read and knows the contents of the Guide.[1] The July 2000 Guide included in the Merger Packets contains a 6–page Arbitration Agreement. (Def's Ex. 1 at 19–25.) The Agreement is found at page 19 of the Guide where it is designated by a separate heading in large bold print. The Agreement specifically provides:

> By accepting or continuing employment ... with Clear Channel, all employees agree to this Arbitration policy. For employees who were employed by AMFM on the date the ... merger was closed, this agreement is effective six weeks from that date.

*Id.* at 19. The Arbitration Agreement is equally binding upon both the employee and Clear Channel: "As a condition of employment with the Company, each employee hereby waives his/her right to sue the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement." *Id.* at 20. It is undisputed that the Arbitration Agreement would cover the Plaintiffs' claims in this case. The July 2000 Guide sets forth the rules governing arbitration, including how to make a demand and pre-hearing procedures for discovery and other matters. *Id.* at 22–25.

Employees hired subsequent to the merger (new hires) are subject to a slightly different procedure. The prospective employee is asked to complete a three-page Employment Application. On the third page of the Application is a highlighted box containing six printed paragraphs. (Def's. Ex. 4 at 3.) By signing the Application, the employee: (1) verifies that the information is true and correct; (2) agrees that Clear Channel may confirm the information; (3) agrees that the application is not a job offer; (4) acknowledges that the terms of any at-will employment may not be altered by oral statements or promises; and (5) is informed that any conditional offer of employment is subject to comple-

---

**1.** The Acknowledgment of Receipt form makes this limited reference to the Arbitration Agreement: "Except as provided by the arbitration agreement or an applicable collective bargaining agreement, the Company may deviate from, amend, modify or revoke any of its rules ..." (Def.'s Exs. 2, 3 & 5.)

tion of employment requirements and verification of information. The sixth paragraph just above the signature line states:

> If employed, I agree to abide by and comply with all of Clear Channel's policies, rules and procedures, including Clear Channel's Open Door Policy, Unlawful Harassment Policy; Policy on Sexual Harassment; Conflicts of Interest Policy; Electronic Communication and Internet Usage Policy; Threat, Violence and Weapons Policy; Safety Policy; Substance Abuse and Drug Testing Policy and the Arbitration Agreement.

(Def's. Ex. 4 at 3.) Upon being hired, the employee is to be furnished with a copy of the "New Hire" Guide that contains a half-page provision briefly describing the Clear Channel Arbitration Agreement and informs the employee that "the Company has an Arbitration policy which will help [resolve employment disputes]. ... All covered disputes will be decided by an impartial arbitrator." (Pls.' Ex. 2 at 19.) The half-page description does not inform the employee that she is giving up her right to sue the Company in court and the right to trial by jury. The employee is told to request a copy of the Arbitration Agreement if it has not already been provided. (Pls.' Ex. 2 at 19.) The Arbitration Agreement is a separate document[2] that provides in part as follows:

> By this Arbitration Agreement, however-er, employees give up their right to sue the Company, and the Company give [sic] up its right to sue employees in court, as well as the right to trial by jury....
>
> As a condition of employment with the Company, each employee hereby waives his/her right to sue the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator....
>
> This Agreement covers the following potential claims:
>
> * * * *
>
> 3. Any claim that could be asserted by Employee or Company...for...wrongful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;
>
> 4. Any claim for discrimination, including ... discrimination because of sex ... sexual harassment ...
>
> * * * *

(Pls.' Ex. 1 at 19.) The new employee is required to sign an Acknowledgment of Receipt of the Guide as well as the separate Arbitration Agreement.

Tracie Beckham was the Business Manager when AMFM was acquired by Clear Channel.[3] It was her responsibility to show the video tape and distribute the July 2000 Guides to the former AMFM employees. Ms. Beckham testified that on September 11, 2000, all Sales Department personnel, including Casteel, Curlett, and Davis, were shown the video tape and told that the Merger Packets would be distributed later that day. Ms. Beckham instructed the employees, including Plaintiffs, to read the July 2000 Guide included in the Pakcet; sign the Acknowledgment of Receipt form provided; and give their completed forms to Steve Jackson, the Sales Department Manager. According to

---

**2.** In fact, the separate Arbitration Agreement given to new hires is, word for word, the same Arbitration Agreement set out within the July 2000 Guide given to the former AMFM employees.

**3.** Ms. Beckham is currently employed by Clear Channel as Business Manager/Human Resource Director.

Beckham, she delivered a Merger Packet to each employee later in the day on September 11, 2000, by putting a packet either on the employee's desk or in the employee's office mailbox. During the meeting, Beckham did not describe or explain the Arbitration Agreement contained within the July 2000 Guide. Ms. Beckham admitted that she was not knowledgeable about the Arbitration Agreement itself.

Melynda Casteel was employed as an account executive from June 16, 2000 to March 1, 2001. Casteel denies receiving a Merger Packet on September 11, 2000, and denies that the Clear Channel Arbitration Agreement was discussed with her by anyone at any time. Ms. Casteel testified that while she was employed by Clear Channel she never saw a copy of the July 2000 Guide. Casteel stated that on January 4, 2001, after deciding to lodge a complaint about the (alleged) ongoing harassment, she went to Ms. Beckham and asked for a copy of the Guide and a telephone number that she could call to file a report. Beckham gave her a phone number but not a copy of the Guide. The next day, Steve Jackson, the Sales Department Manager, presented Casteel with an Acknowledgment of Receipt form and told her to sign it. Casteel refused to sign without first receiving a copy of the Guide. According to Ms. Casteel, when she came in to work on Monday, January 8, 2001, she found a Guide on her desk. Jackson again approached her and demanded that she sign the Acknowledgment form. Casteel signed the Acknowledgment with Jackson standing over her, back dating the form to January 5, 2001. Casteel claimed that she was not given time to review the Guide or the Acknowledgment before signing but admitted that she did thumb through the Guide immediately afterwards. Casteel testified that the Guide she received was the "New Hire" Guide that contains the half-page description of the Arbitration Agreement. (Pls.' Ex. 2.) Casteel did not receive or sign a separate Arbitration Agreement. Ms. Casteel terminated her employment with Clear Channel on March 1, 2001.

Gail Curlett was employed as an account executive from June 16, 2000 through March 26, 2001. Ms. Curlett testified that she was not present at the meeting on September 11, 2000; she denied receiving a copy of the Merger Packet in September, 2000, or any other time while employed by Clear Channel; and she denied that the Arbitration Agreement was discussed with her by any one during her employment with Clear Channel. Ms. Curlett testified that she did sign an Acknowledgment of Receipt form after being directed to do so by Steve Jackson, but she was not given an opportunity to read the Acknowledgment form and she was not given a copy of a Guide. She stated that the confrontation with Jackson made her upset and that she went home immediately afterwards. Curlett could not recall exactly when she signed the form, although she did recall leaving the form undated. The Acknowledgment of Receipt form is dated January 5, 2000.[4] (Def's.Ex. 3.) Ms. Curlett resigned from Clear Channel on March 26, 2001.

Linda Davis was employed as an account executive from August 1998 through October 2000. She testified that she saw the video tape on September 11, 2000, but stated that the Arbitration Agreement was not explained in the tape. In addition, Ms. Davis claimed that, immediately after the meeting on September 11, 2000, the Director of Sales, Wayne Boyd, told her and

---

4. This date must be incorrect. Ms. Curlett first become employed by AMFM, Clear Channel's predecessor, in June 2000. It is not known who affixed the date to the acknowledgment form signed by Curlett.

the other Sales Department employees that they should ignore the new policies and that he would fire anyone who went over his head with a problem. Ms. Davis denied receiving a copy of the Merger Packet in September 2000, or at any other time, and she denied that the Arbitration Agreement was explained to her by anyone while she was employed by Clear Channel. Davis resigned from Clear Channel on October 31, 2000.

Elisha Parker was hired in December of 2000 after the merger was complete. Parker was employed as an administrative assistant from December 7, 2000 through March 15, 2001. Prior to being hired, Parker went through two interviews. Before the second interview on December 5, 2000, Parker filled out the Employment Application and signed her name at the bottom. Parker testified that she did not read the information in the highlighted box before signing the Application. On her first day of work, Parker was handed a stack of six papers and told to sign and return the documents as soon as possible.[5] One of the forms Parker signed was an Acknowledgment of Receipt of the Guide. (Def's.Ex. 5.) Parker also signed her name to the sixth page of the Arbitration Agreement. (Def's.Ex. 6.) Parker testified that she did not read the Acknowledgment of Receipt form before signing it, and that she was not given a copy of any Guide while employed by Clear Channel. She also stated that she did not read page six of the Arbitration Agreement; that she was never given a complete copy of the Arbitration Agreement; and that the Arbitration Agreement was never discussed or explained to her by anyone at Clear Channel. On January 8, 2001, Ms. Beckham directed Parker to sign another Acknowl-edgment of Receipt form. (Pls.Ex. 4.) According to Ms. Parker, she did as she was told without taking time to read the form, because Ms. Beckham was standing over her waiting to collect the completed document.

## II. Arbitration Agreements

■ In the Eighth Circuit, arbitration is required if a valid agreement exists and the dispute falls within the scope of the agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir.2001) (citing cases). The Federal Arbitration Act mandates that courts shall direct parties to arbitration on issues to which a valid arbitration agreement has been signed. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). However, a party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ It is for the court to decide whether an agreement to arbitrate is valid. *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 791 (8th Cir.1998) (en banc) (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). The validity of an arbitration agreement is determined by reference to state law:

> To decide whether the parties' agreement to arbitrate is valid, we look to state contract law. *See Perry v. Thomas,* 482 U.S. 483, 493–94 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity,

---

**5.** The documents included: (1) an Acknowledgment of Receipt of the July 2000 Guide; (2) the sixth page of the Arbitration Agreement; (3) a two-page Confidentiality, Trade Secrets, and Non–Compete Agreement; (4) a Payroll Deduction form; and (5) a W–4 form. (Pls.' Ex. 3.)

revocability, and enforceability of contracts generally."). We may apply state law to arbitration agreements only to the extent that it applies to contracts in general. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Put another way, we may not invalidate an arbitration agreement under any state law applicable only to arbitration provisions; instead, we may apply only a state's general contract defenses. *See Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

*Barker,* 154 F.3d at 791. As Arkansas is the forum state and the alleged agreement was entered into within the State of Arkansas, Arkansas contract law controls the issue of validity of the arbitration agreement.

 Arkansas law provides that the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Williamson v. Sanofi Winthrop Pharm., Inc.,* 347 Ark. 89, 60 S.W.3d 428 (2001) (citing *Foundation Telecomm. v. Moe Studio,* 341 Ark. 231, 16 S.W.3d 531 (2000)); *Gentry v. Hanover Ins. Co.,* 284 F.Supp. 626 (D.C.Ark.1968) (cited in *Hunt v. McIlroy Bank & Trust,* 2 Ark.App. 87, 616 S.W.2d 759 (1981)); *see also Southern Surety Co. v. Phillips,* 181 Ark. 14, 24 S.W.2d 870 (1930). With regard to mutuality of agreement, the Arkansas Supreme Court has consistently applied two legal principles: (1) if there is no meeting of the minds, there is no contract; and (2) in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Williamson,* 347 Ark. at 98, 60 S.W.3d at 434. While the standard for determining mutuality is an objective one, a manifestation of assent may be made wholly by spoken words or by conduct. *ERC Mortg. Group, Inc. v. Luper,*

32 Ark.App. 19, 22–23, 795 S.W.2d 362, 363—364 (Ark.App.1990) (citing Restatement (Second) of Contracts §§ 19).

In *Crain Industries, Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910 (Ark.1991), the Arkansas Supreme Court held that an express provision in an employee handbook could constitute a valid and enforceable contract "[i]f the handbook language [is sufficiently definite to constitute] an offer, and the offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability." *Id.,* 305 Ark. at 572–574, 810 S.W.2d at 913—914 (citations omitted). "Where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation." *Id.*

Clear Channel contends that the Arbitration Agreement is enforceable against each Plaintiff because all necessary elements of a valid contract have been demonstrated. With regard to Casteel, Curlett, and Davis, the objective indicators of agreement include the viewing of the video tape on September 11, 2000; the distribution of the July 2000 Guide containing the Arbitration Agreement; and the signed Acknowledgments of Receipt of the Guide. Ms. Parker manifested her assent to the Arbitration Agreement by signing the Employment Application, the Acknowledgment of Receipt of the Guide, and the separate Arbitration Agreement. In addition, Clear Channel submits that acceptance and consideration for the agreements are shown by each Plaintiff's continued employment with knowledge of the Arbitration Agreement. For their part, each Plaintiff denies being informed of the Arbitration Agreement either by receiving a copy of the Guide and/or the

Agreement and denies she agreed to be bound by the Agreement.

■ The Court finds that the video tape shown to Plaintiffs on September 11, 2000, is insufficient to form the basis for a binding contract to arbitrate. The video tape does not set forth with reasonable certainty the terms of the Arbitration Agreement, and it does not in any way provide a basis for determining the existence of a breach and for giving an appropriate remedy. *See Shibley v. White,* 193 Ark. 1048, 104 S.W.2d 461 (1937) (citing Restatement (Second) of Contracts §§ 33).

■ We also conclude that the New Hire Guide does not form the basis for a binding contract to arbitrate, because it does not specifically state that the employee agrees to waive her right to sue the Company in court and the right to trial by jury. Without this advice of rights and waiver, the arbitration section of the New Hire Guide in not sufficiently certain to form a binding contract to arbitrate. *Shilbey, supra.*

■ With regard to Ms. Davis, Clear Channel has failed to produce evidence indicating that Davis agreed to submit to arbitration and waive her right to trial by jury. Although Ms. Beckham testified that she either placed a copy of the July 2000 Guide on Davis' desk or in her workplace mailbox, it has not been shown that Ms. Davis actually received the Guide or understood its contents. It has not been shown that Davis signed an Acknowledgment of Receipt of the Guide or a separate Arbitration Agreement. In addition, Ms. Davis terminated her employment with Clear Channel about eight weeks after the Guide was allegedly disseminated. Based upon these facts, the Court cannot conclude that Ms. Davis entered into an agreement to arbitrate.

It is undisputed that Plaintiffs Curlett and Casteel signed Acknowledgments of Receipt of the Guide. In *Banks v. Evans,* 347 Ark. 383, 64 S.W.3d 746 (2002), the Arkansas Supreme Court reaffirmed the general rule that "one is bound to know the content of a document one signs, and if the signer has had the opportunity to read it before she signs it, she cannot escape the obligations imposed by the documents by merely stating that it was signed without reading it." *Id.,* 347 Ark. at 391, 64 S.W.3d at 751. Plaintiffs seek to void the agreements by offering evidence of duress, undue influence, inequality of bargaining power, or other inequitable conduct. Both Curlett and Casteel testified that the Acknowledgment form was signed without having read the Guide or the Acknowledgment itself. Ms. Curlett claims she was never given any Guide, and Ms. Casteel told the Court that she received the New Hire Guide after demanding one, but that she was not given an opportunity to read it before signing the Acknowledgment. Both testified that Mr. Jackson required them to sign the Acknowledgment while he stood over them and watched. Plaintiffs essentially argue that the contracts they signed were unconscionable.

■ The Arkansas Supreme Court has adopted the following test for determining unconscionability in contract cases:

In assessing whether a particular contractual provision is unconscionable, courts should review the totality of the circumstances surrounding the negotiation and execution of the contracts. Two important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provision in question.

*State v. R & A Inv. Co.,* 336 Ark. 289, 296, 985 S.W.2d 299 (1999) (citations omitted). Applying the unconscionability test this case, the Court finds that Curlett and

Casteel should not be bound by the Acknowledgments of Receipt they signed in January 2001. Steve Jackson, Plaintiffs' supervisor, presented each with a form and demanded that it be signed. Both women signed the form in his presence. The Acknowledgment of Receipt form contains no description or explanation of the Arbitration Agreement. Curlett testified that she never received any Guide, while Casteel received a Guide that did not contain the complete Arbitration Agreement. Defendant has failed to demonstrate that Curlett and Casteel were made aware of the arbitration agreement, including the waiver of rights, and that they agreed to the provision. Accordingly, Curlett and Casteel cannot be compelled to submit to arbitration in this case.

 The same problems arise with regard to the forms signed by Ms. Parker. She did sign an Employment Application stating that she agreed to be bound by the Arbitration Agreement if employed, but she testified that she did not read that portion of the Application before signing. Even if she had read the entire Application, she would not have acquired an understanding of the Arbitration Agreement. Ms. Parker also admitted signing two separate Acknowledgments of Receipt of the July 2000 Guide. However, she stated that the form she signed on December 7, 2000, was one of five she was told to sign and return as quickly as possible and she did so without reading it. She testified that she signed second form on January 8, 2001, again without reading it, because Ms. Beckham was standing at her desk impatiently waiting to collect it. Ms. Parker's statement that she did not receive a copy of any Guide at any time was not directly contradicted by anyone. Finally, while Ms. Parker admitted signing page six of the Arbitration Agreement, she claims that she did so without reading it because it was one of the five documents she was supposed to sign and return as soon as possible. Her statement that she did not receive the other five pages of the Arbitration Agreement was not contested. We note that the last page of the Arbitration Agreement does not set forth the substantive provisions explaining arbitration and waiving the right to trial by jury. Under these facts, we cannot find that mutuality of agreement has been demonstrated or that a binding contract to arbitrate was formed with regard to Ms. Parker.

## III. Conclusion

For the reasons stated herein, the Court finds that Defendant has not demonstrated that any Plaintiff agreed to submit her claims to arbitration. Accordingly, Defendant's motion should be and hereby is DENIED.

This case remains set for trial the week of October 20, 2003.

IT IS SO ORDERED.