BRANDON J. HARRISON, Judge
Sandra Franks appeals the circuit court's divorce decree, arguing that the circuit court erred in (1) its division of the retirement accounts, (2) its division of the marital home, and (3) dividing the property in a "starkly inequitable" manner. We affirm.
Sandra and William Franks married in September 1993 and separated in November 2016. Sandra filed for divorce and asked the circuit court to make an equitable division of the marital property. William counterclaimed for divorce and agreed that the parties' property should be fairly and equitably divided. In their pleadings, neither party mentioned a prenuptial agreement signed in September 1993; this agreement stated that
each of the parties have agreed that all of the property now owned by either party or hereafter acquired by either of them by gift or inheritance, including any property conveyed to either party by the other, shall be free from any rights or claims that each party might otherwise acquired as the other's spouse[.]
The agreement also included a list of the parties' separate property; on William's list was "ABF Retirement or Pension" and "ABF Stock."
The circuit court convened a hearing in June 2017. Sandra testified that she and William bought their marital home on Bunker Hill Drive in November or December 1997 and that the $31,000 down payment came from an inheritance she had received from her aunt. She testified that she paid another $10,000 toward the property in December 1997 and $63,425 toward the property in March 1998; both of these payments stemmed from Sandra's inheritance from her aunt. In January 2000, Sandra received a $25,000 payment of gas royalties that she inherited from her aunt, *873 and that money was used to make improvements to the Bunker Hill house. And in June 2011, William's brother paid approximately $34,000 to pay off the house. In all, Sandra estimated that she had paid 80 percent of the purchase price of the home, and she asked the court to divide the value of the marital home accordingly. She acknowledged that a separate property known as the Barling property was William's premarital property, although she said that she was responsible for managing the rental properties contained on that property.
Sandra also explained that William has a pension "with the Teamsters when he retired from ABF" and that he had worked for ABF for five years before they were married. She said that William was currently receiving $1772 a month from that pension. Sandra explained that William also has an IRA through ABF and that after he retired, "the IRA was left through Morgan Stanley and then they said since he was no longer working it had to be rolled over into a Fidelity account." She also said that it was divided into stocks. According to Sandra, during the marriage she had access to the IRA and withdrew money at William's request whenever he needed it.
On cross-examination, Sandra agreed that the Bunker Hill house was held jointly by her and William. She also agreed that she and William had signed a prenuptial agreement and that the agreement listed the Barling property, "ABF Retirement or Pension," and "ABF Stock" as William's property. But she said that William's pension was through the Teamsters, not through ABF.
William testified that he did not dispute any of Sandra's testimony. He stated that he wanted the Bunker Hill home to be equally divided and that the Barling property was his separate property. He also agreed that the Fidelity account, which was his 401k through ABF, and his pension are listed as his separate property in the prenuptial agreement as "ABF retirement or pension." He clarified that his pension is "a Teamsters pension that was paid through ABF." He also said, "I had stock too, but we sold that." He also stated that he had put Sandra's name on the Morgan Stanley account because she was his wife and acknowledged a 2013 account statement from Morgan Stanley that listed him and Sandra as "JTWROS," meaning joint tenants with right of survivorship. Sandra was recalled and confirmed that when the Morgan Stanley account was rolled over into Fidelity, her name was not placed on the account.
After the hearing, the court issued a letter opinion that found in pertinent part:
The Court determines the home place is marital property based upon the testimony of the parties; the status of the ownership as Tenants by the Entirety; and the joint occupance and contributions of the parties. There was no proof before the Court of any intent to keep this property separate and no indication from either party that the property was maintained other than as joint property. This property shall be listed and sold and the proceeds divided equally between the parties[.] ...
The Court finds the Premarital Agreement is legal and binding as to all property of the parties listed in the Agreement. The pension and IRA accounts are specifically mentioned in the premarital agreement and have been maintained as separate property. Thus, the finding of the Court is that these properties and any increase in the value are the sole property of the Defendant. The Fort Street property in Barling is premarital property and has always been maintained as such.
*874 The court also awarded Sandra temporary support and maintenance in the amount of $665.50 a month until March 2019. The court entered a written order in July 2017, and Sandra has appealed.
This court reviews cases involving the division of marital property de novo. Beck v. Beck , 2017 Ark. App. 311, 521 S.W.3d 543. With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Skokos v. Skokos , 344 Ark. 420, 40 S.W.3d 768 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Id.
I. Retirement Accounts
In its order, the circuit court found that "the pension and the I.R.A. accounts are specifically mentioned in the Premarital Agreement and have been maintained as separate property." Sandra argues that this finding is clearly erroneous because the agreement was limited to "property now owned," and William did not then own the accumulations added to his pension and his retirement accounts. Sandra also asserts that the Morgan Stanley/Fidelity account was not listed in the agreement and that it was joint property acquired during the marriage. Sandra contends that a fair reading of the agreement would be to apply the exclusion to what William owned at the time the agreement was executed, namely his pension, but not to the Morgan Stanley/Fidelity account.
William argues that the prenuptial agreement clearly listed his "ABF Retirement or Pension" and that the Morgan Stanley and Fidelity accounts were products of his ABF retirement/pension. He asserts that the Fidelity account was in his name only and that the Morgan Stanley account with Sandra's name on it was the stock account that was sold. William contends that a premarital agreement is valid if the parties freely entered it and it is free from fraud, see Banks v. Evans , 347 Ark. 383, 64 S.W.3d 746 (2002), and that in this case, Sandra does not allege any fraud. Instead, she takes issue with how the circuit court interpreted and applied the agreement, but William argues that the circuit court did not err in its interpretation and application of the agreement.
Sandra appears to reply that the lists of the parties' separate property attached to the prenuptial agreement were only a disclosure of assets and that the prenuptial agreement only applied to "property now owned or hereafter acquired by gift or inheritance" but not to the listed property. She ends on the point that the Morgan Stanley/Fidelity account is not on William's list of separate property and thus should not be subject to the agreement.
We are unpersuaded by Sandra's argument. By the clear terms of the agreement, William's retirement plan and pension are excluded as his separate premarital property. The retirement plan may have changed names, resulting in the Fidelity account, but it is still the same retirement plan listed in the agreement. While Sandra was listed as a joint tenant with right of survivorship on a Morgan Stanley account, the exhibit introduced by Sandra supports William's testimony that the account was a stock account that was later sold. And while Sandra had access to the Fidelity account so she could withdraw money at William's request, this does not change the ownership of the account. We therefore affirm on this point.
II. Division of the Marital Home
Here, Sandra again explains that her inheritance money paid approximately *875 80 percent of the cost of the home and argues that "there is little difference between the character of the Barling property which the Appellant concedes to be protected by the prenuptial agreement and the investment in the homeplace from her own personal inheritance other than timing." Sandra says that the circuit court should have considered the factors set out in Ark. Code Ann. § 9-12-315 (Repl. 2015):
(a) At the time a divorce decree is entered:
(1)(A) All marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:
(i) The length of the marriage;
(ii) Age, health, and station in life of the parties;
(iii) Occupation of the parties;
(iv) Amount and sources of income;
(v) Vocational skills;
(vi) Employability;
(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and
(ix) The federal income tax consequences of the court's division of property.
Specifically, Sandra argues that the court should have considered the length of the marriage, the age and health of the parties, and in particular, the contribution of each party in the marital home. In her view, that William keeps his inheritance, which is the Barling property, and also receives half of her inheritance, is unfair.
William argues that there is no question that he and Sandra held the marital home as tenants by the entirety and therefore that any contribution made by either party toward the home should be considered a gift. See Lyle v. Lyle , 15 Ark. App. 202, 691 S.W.2d 188 (1985) (contributions toward down payment of property held as tenants by the entirety are presumed to be a gift from the party furnishing the consideration). Thus, the court's division of this property was fair and equitable and should be affirmed. Sandra believes that the circuit court's division of property is "grossly inequitable" and that the court should have used its discretion under § 9-12-315 to reach a more equitable result.
We hold that the circuit court did exactly what it was supposed to do-it enforced the prenuptial agreement in dividing the parties' premarital property (as listed in the agreement), and it divided the jointly held marital property (the marital home) equally. Arkansas law has long recognized the validity of premarital agreements, and as noted above, a premarital agreement is valid if it was freely entered into and is free from fraud and not inequitable. See Banks, supra. Parties contemplating marriage may, by agreement, fix the rights of each in the property of the other differently than established by law. Id. In this case, Sandra does not argue the agreement is unconscionable or unenforceable; she merely asserts now that it is unfair as applied. Regardless, it is a valid contract that she freely entered into, and the court did not err in enforcing it. We affirm on this point.
III. Inequitable Division
Based on the circuit court's property division as outlined above, Sandra argues that the monthly income of the two parties *876 is grossly inequitable. According to Sandra, William will receive a monthly income of $5,710.25, consisting of rental income from the Barling property, his pension, and Social Security. Sandra will receive $1,331.50, consisting of Social Security and spousal support; after March 2019, she will receive only $666 a month in Social Security. Regarding the marital home, she argues that the proceeds of the home should be distributed "in the same ratio of contributions to the purchase," which would "extend the purpose of the agreement" to her inheritance as well. William argues that this point is merely a reargument of her first two points and again asserts that the circuit court properly considered the evidence at trial in making its property division.
For the same reasons noted above, we affirm on this point. Sandra has not challenged the validity of the prenuptial agreement; instead, she argues that enforcing the agreement results in an inequitable distribution of property. But again, parties contemplating marriage may, by agreement, fix the rights of each in the property of the other differently than established by law. Banks, supra.
Affirmed.
Virden and Klappenbach, JJ., agree.