Cite as 2019 Ark. App. 375

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV–18–577

|  |  |
|---|---|
|  | **Opinion Delivered:** September 11, 2019 |
| CHRISTOPHER S. HOLLOWAY<br>APPELLANT/CROSS-APPELLEE | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04DR–16–2082] |
| V. | HONORABLE SCOTT JACKSON, JUDGE |
| TORI D. HOLLOWAY<br>APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## WAYMOND M. BROWN, Judge

In this divorce action, Christopher S. Holloway (who is known as Shawn and will be referred to as such herein) appeals the order of the Benton County Circuit Court. He asserts that the court erred by "imposing an unreasonable financial burden on [him] by awarding retroactive and current support without any finding establishing [his] income, without the mandatory reference to the child support chart, and without considering applicable factors supporting a downward deviation." Shawn also challenges the division of the parties' property. Tori D. Holloway (Tori) cross-appeals arguing (1) equal division of the marital home was erroneous, and (2) the award of additional visitation beyond what was exercised during the parties' long separation was not in the children's best interest. We affirm the circuit court's order.

Shawn and Tori were married on June 1, 2001, and filed for divorce in December 2016. The divorce decree entered on March 12, 2018, distributed the marital assets, debts, and property between the parties, and also established the custody, visitation, and child-support obligations of the parties with regard to the four children born of the marriage.

Following the entry of the divorce decree, Shawn filed a motion for reconsideration urging the court to reconsider the child-support award due to the totality of the financial burden placed on him as a result of having to pay current and retroactive child support, half of the children's private-school tuition, and also contribute toward their extracurricular activities and medical expenses. In response, Tori urged the circuit court to deny the motion stating that Shawn had "not complied with any recognized procedure to alter the decree" as required under Rule 59 or Rule 60 of the Arkansas Rules of Civil Procedure. Shawn replied, alleging that the child-support award was excessive and, although not explicitly stated, his motion for reconsideration should be considered a motion for a new trial under Arkansas Rule of Civil Procedure 59.

Arkansas Rule of Civil Procedure 59(b) provides

A motion for a new trial shall be filed not later than 10 days after the entry of judgment. A motion made after entry of judgment shall become effective and be treated as filed on the day after the judgment is entered. If the court neither grants nor denies the motion within 30 days of the date on which it is filed or treated as filed, it shall be deemed denied as of the 30th day.

Here, the motion was filed on March 23 and was deemed denied thirty days later on April 24.[1] Shawn filed his notice of appeal on April 9, which was prior to the deemed

---

[1] The thirtieth day, April 22, fell on a Saturday; therefore, the time for filing was extended until the next day the clerk's office was open (Monday, April 24). *See* Ark. R. Civ. P. 6(a).

denial of his postjudgment motion. While a notice of appeal filed before disposition of any motion to alter, amend, or set aside a judgment shall be treated as filed on the day after entry of an order disposing of the last motion outstanding or the day after the motion is deemed denied by operation of law, such a notice is only effective to appeal the underlying judgment, decree, or order, not the postjudgment motion.[2] Shawn's failure to file an amended notice of appeal following the deemed denial of the postjudgment motion is fatal to our appellate review of the issues raised therein.

We review divorce cases de novo on the record.[3] We will not reverse a circuit court's finding of fact in a divorce case unless it is clearly erroneous.[4] A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.[5]

I. *Shawn's Direct Appeal*

Shawn contends that the circuit court erred in (1) not making a finding regarding his income, (2) ordering child support at a rate of $725 biweekly, and (3) not referencing the child-support chart. We note that Shawn also took issue with the circuit court's award of retroactive child support and failure to consider factors supporting a downward deviation

---

[2]*See* Ark. R. App. P.–Civ. 4(b)(2).

[3]*Kelly v. Kelly*, 2014 Ark. 543, 453 S.W.3d 655.

[4]*McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000).

[5]*Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36.

3

from the family support chart.  However, because Shawn failed to raise these arguments below, they are waived on appeal.[6]

Case law provides that in setting child support, reference to the family support chart contained in Administrative Order No. 10 is mandatory.[7]  It establishes a rebuttable presumption that support awarded pursuant to the chart is the appropriate amount of support and can be modified only upon written findings stating why the application of the chart amount would be unjust or inappropriate.[8]  When the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion.[9]

Shawn first challenges the circuit court's failure to make a finding regarding his income.  He asserts, for the first time on appeal, that there is conflicting evidence as to what his income is for child-support purposes.  In support of his contention, he relies on Tori's testimony that Shawn's 2016 W-2 showed a net income of $49,804, which amounts to $957 per week.  However, that testimony was provided for purposes of calculating retroactive child support.[10]  In the parties' temporary order, Shawn agreed to pay child support in "the sum of $725.00 bi-weekly based on the bi-weekly take home pay of $2677.00 . . . ."

---

[6] *See Hunter v. Runyan*, 2011 Ark 43, 382 S.W.3d 643.

[7] *See Black v. Black*, 306 Ark. 209, 812 S.W.2d 480 (1991); *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998).

[8] *Ceola v. Burnham*, 84 Ark. App. 269, 139 S.W.3d 150 (2003).

[9] *Browning v. Browning*, 2015 Ark. App. 104, 455 S.W.3d 863.

[10] Because Tori was requesting retroactive child support from the time the parties separated in July 2014 until the agreed temporary order was entered in December 2017, she provided testimony regarding Shawn's income during that time period.

Furthermore, in the divorce hearing, Shawn acknowledged, "[a]fter taxes, my biweekly take-home pay is around $2600." Notably, his affidavit of financial means also indicates a net biweekly pay of $2677.52. At no point did Shawn dispute that his income for child-support purposes was anything other than $2677 or that his child-support obligation should be anything other than $725 biweekly.

In order to calculate Shawn's child-support obligation, we refer to Administrative Order No. 10's Bi-weekly Family Support Chart. The chart tops out at a net income of $2000 with a corresponding support obligation for four children of $544. Administrative Order No. 10 further provides that for four children, twenty-eight percent of any income which exceeds the chart shall be added to the amount obtained from the chart to calculate the total child-support obligation. Here, twenty eight percent of the remaining income of $677.52 is $189.71. When added to the $544 child-support amount obtained from the chart, Shawn's total child-support obligation is $733.71. The difference between the amount of child support the circuit court awarded and the amount of child support calculated pursuant to Administrative Order No. 10 is negligible. We therefore hold that the award of $725 biweekly child support based on Shawn's net pay of $2677.52 is consistent with the family support chart provided in Administrative Order No. 10.

Shawn next asserts that the circuit court's award of child support was not in accordance with the guidelines of Administrative Order No. 10 because it failed to directly reference the family support chart. Administrative Order No. 10 provides, in relevant part,

> All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the Family

Support Chart. If the order varies from the guidelines, it shall include a justification of why the order varies as may be permitted under Section V hereinafter.

Because Shawn's income was not in dispute below and it is clear that the circuit court did not deviate from the family-support chart, we find no reversible error in Shawn's argument.

Shawn also took issue with the court's division of the property, primarily the marital home. This court reviews cases involving the division of marital property de novo.[11] With respect to the division of property, we review the court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence.[12] A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.[13] In order to establish that the circuit court's ruling was erroneous, the appellant must show that the circuit court abused its discretion by making a decision that was arbitrary or groundless.[14] We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony.[15]

From the time of the parties' separation until the divorce hearing, Tori used her separate funds to pay the mortgage on the marital home, resulting in a $22,557.06 reduction of the principal balance, which the court awarded Tori as a credit against Shawn's equity in

---

[11]*Beck v. Beck*, 2017 Ark. App. 311, 521 S.W.3d 543.

[12]*Franks v. Franks*, 2018 Ark. App. 266, 548 S.W.3d 871.

[13]*Id.*

[14]*McGahhey v. McGahhey*, 2018 Ark. App. 597, 567 S.W.3d 522.

[15]*Id.*

the home. During the marriage, the parties also purchased a five-acre lot that was later sold for $22,861.95. Shawn used that money to pay off his credit-card debt, which was his sole responsibility to pay. The debt included charges for furniture he purchased for his new home and debt incurred to pay for his election campaign. The circuit court awarded Tori a credit for the $22,861.95 against Shawn's equity in the home.

Shawn challenges both of the credits awarded to Tori, contending that it was error for the court to divide marital assets unequally on the basis that premarital funds were used to make the purchases without written findings justifying the unequal distribution. However, the court did not apply an unequal distribution of the parties' marital home. In the order, the circuit court explicitly stated,

> That the Court finds that it would not be appropriate for an unequal distribution of the marital homeplace based upon the Defendant having paid substantial monies to purchase the land and improvements of the homeplace from her non-marital Merrill Lynch account.

Instead, the court *equally* divided the marital home, and then gave Tori a credit on the principal reduction of the mortgage for the time period that she alone made the payments and maintained the homeplace; and Tori received a credit for the five-acre lot proceeds that Shawn used to pay his personal debts. We find no abuse of discretion in the division of the property, nor the credits awarded to Tori, as they were neither arbitrary nor groundless.

## II. *Tori's Cross-Appeal*

On cross-appeal, Tori argues that the circuit court's equal division of the home was erroneous in consideration of her "disproportionate contribution to the acquisition of the

7

marital home." However, she acknowledges the statutory presumption that marital property shall be divided equally unless the court finds such a division to be inequitable.[16]

It is undisputed that Tori used nonmarital funds from a Merrill Lynch account opened on her behalf by her father to fund the purchase of the eleven-acre tract of land upon which the home was constructed ($40,000), approximately another $170,000 from the account went toward the construction of the home, and an additional $31,000 was used to purchase the five-acre lot. Shawn countered that he made substantial contributions in the form of "sweat equity" toward the construction of the marital home, which saved the parties a considerable amount of money in labor and contracting expenses. Given the statutory presumption favoring equal division of marital property, we find no clear error in the circuit court's award of equal division of the marital home.

Tori also challenges the circuit court's decision to award Shawn an extra day of visitation every other week in addition to the visitation he exercised during the parties' separation. Regarding visitation, the primary consideration is the best interest of the children.[17] Among the factors the court considers in determining visitation are the wishes of the children, the capacity of the party desiring visitation to supervise and care for the children, problems of transportation and prior conduct in abusing visitation, the work

---

[16]*See* Ark. Code Ann. § 9–12–315(a)(1)(A) (Repl. 2015).

[17]*Baber v. Baber*, 2011 Ark 40, 378 S.W.3d 699.

schedule or stability of the parties, and the relationship with the siblings and other relatives.[18]

Setting visitation is a matter within the sound discretion of the circuit court.[19]

In the agreed temporary order, Tori was awarded the temporary care and custody of the parties' four minor children while Shawn was granted visitation with the children every Wednesday and every other weekend (Friday through Monday morning). In the parties' divorce, Shawn requested an additional day with the children; on his weekends he wished to exercise visitation from Wednesday through Monday morning, in addition to Wednesday of the following week. While Tori raises a general concern that the alteration of visitation is not in the children's best interests, she fails to offer any concrete examples of how the children have been negatively affected by the time they have spent with their father, other than an unsupported contention that Shawn does not provide the proper help with the children's homework. Furthermore, at the divorce hearing, Tori acknowledged that Shawn is a fit and proper parent. Therefore, we find no abuse of discretion in the circuit court's award of an additional day of visitation to Shawn.

Affirmed on direct appeal; affirmed on cross-appeal.

GLADWIN and VAUGHT, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant/cross-appellee.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee/cross-appellant.

---

[18]*Id.*

[19]*Id.*